IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN MAKARA | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 08-5545 |
| | : | |
| ALBERT EINSTEIN HEALTHCARE NETWORK | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

**Baylson, J.**                           **April 14, 2009**

### I. Introduction

Plaintiff, Kathleen Makara, brings this employment action for violations of the Americans with Disabilities Act, the Age Discrimination in Employment Act, and breach of contract against Defendant, Albert Einstein Healthcare Network. Defendant has filed a Motion to Dismiss Count III, the breach of contract claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, this Motion will be GRANTED.

### II. Background

Plaintiff is currently a 52 year old, white female. (Compl. ¶ 4). She began employment as a registered nurse with Defendant in October 1981. (Compl. ¶ 14). On or about September 17, 2006, Plaintiff alleges that she began taking accrued vacation and sick time to have surgery to alleviate severe back pain. (Compl. ¶ 15). She alleges that she underwent surgery on October 26, 2006. (Id.) Plaintiff alleges that she provided Defendant with a certificate of disability dated

September 19, 2007 [sic, likely meant 2006], which recommended restrictions on her ability to work. (Compl. ¶ 17). On or about January 19, 2007, Plaintiff received medical clearance to return to work. (Compl. ¶ 16). Beginning January 22, 2007, Plaintiff began applying for a total of six registered nurse positions. (Compl. ¶ 20, 22). Plaintiff alleges that she was qualified for these positions but was rejected. (Compl. ¶ 21, 23).

Plaintiff alleges that on or about February 5, 2007, Liz Meschner, an agent of Defendant, informed Plaintiff that Mr. Margott, employed in Defendant's human resources department, submitted disability paperwork on Plaintiff's behalf. (Compl. ¶ 24). Plaintiff alleges that she did not consent or approve of Defendant's decision to submit such paperwork. (Compl. ¶ 25). On or about February 9, 2007, Plaintiff provided Defendant with a certificate of disability with lesser restrictions on her ability to work, and on or about May 14, 2007, Plaintiff provided a certificate recommending a return to full duty with no restrictions. (Compl. ¶¶ 26, 28). Plaintiff alleges that on or about Aril 2, 2007, she was informed by Mary Beth Kingston, an agent of Defendant, that she had not been selected for one position she applied for due to the restriction on how much weight she could lift. (Compl. ¶ 27). Plaintiff claims that she was regarded as disabled by Defendant (Compl. ¶¶ 34, 36). Plaintiff further alleges that Defendant failed to provide a reasonable accommodation and did not make a good faith effort to assist her in securing another position, despite her request. (Compl. ¶¶ 35, 38). Based on these allegations, Plaintiff asserts a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. (Compl. ¶ 40).

Plaintiff further asserts that she applied for and was qualified for at least ten positions, she was rejected for the positions, Defendant continued to receive applicants for the positions, and on information and belief, Defendant filled the positions with comparable or less favorable

applicants to Plaintiff. (Compl. ¶¶ 44-46). Plaintiff asserts that Defendant's proffered reasons for not hiring her were pretextual and Defendant rejected Plaintiff to be able to fill the position with younger applicants and therefore at a substantially reduced salary. (Compl. ¶ 50). Based on these allegations, Plaintiff asserts a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. (Compl. ¶ 52).

Plaintiff's breach of contract claim is based on Defendant's Employee Handbook. (Compl. ¶ 56). Plaintiff alleges that the Handbook was "a contract that governed plaintiff's conduct and provided benefits and programs that the defendant agreed to provide to the plaintiff." (Compl. ¶ 57). Plaintiff specifically relies on provisions of the Handbook which state that Defendant "'fills job openings from within the network whenever possible'" and "'[o]nce [an employee] successfully completes your Introductory Period, [employees] are eligible to be considered for promotions or transfers.'" (Compl. ¶ 58; Ex. 3 p. 29). In addition, the Handbook described a "'special job matching/re-employment assistance program. Through this program, eligible employees of any JHS member organization who are laid off will receive first consideration (before all internal or external applicants) for all available vacant positions within JHS.'" (Compl. ¶ 60; Ex. 3 p. 30). Plaintiff asserts that she successfully completed her Introductory period and that she was eligible for the job matching program. (Compl. ¶¶ 59, 61). Plaintiff further alleges that Defendant breached this contract when it failed to assist Plaintiff in securing another registered nurse position and instead filled the positions to which Plaintiff applied with external applicants. (Compl. ¶ 62).

In addition to the language from the Handbook quoted above, the Defendant's brief

includes in Exhibit A a page of the Handbook with the following language:

> Neither the handbook nor any policies referred to in the handbook shall be construed as a contract or as conferring any contractual rights.
> Employees are employees "at will" at all times and may resign or be discharged at any time for any reason, with or without notice and with or without cause. Nothing in this handbook or any other policy or communication, whether oral or written, changes an employee's "at will" status.

(Def.'s Memo. Law Support Mot. Dismiss Ex. A p. 6).

Plaintiff first filed a complaint with the EEOC regarding her claim on October 29, 2007. (Compl. Ex. 1). She received a right to sue letter on August 29, 2008. (Compl. Ex. 2). Plaintiff filed her Complaint in federal court on November 26, 2008 (Doc. No. 1). Defendant answered and filed this Motion to Dismiss Count III on January 26, 2009 (Doc. Nos. 2, 3). Plaintiff filed a Motion to Strike Defendant's Twelfth Affirmative Defense on February 13, 2009 (Doc. No. 9), which was mooted by Defendant's Amended Answer on February 18, 2009 (Doc. No. 10).

### III.  Parties' Contentions

#### A.  Defendant's Motion to Dismiss

Defendant argues that Plaintiff's breach of contract claim should be dismissed because the Employee Handbook does not create a contract in light of its express language and does not rebut the presumption that employees are "at will." Defendant argues that there is a strong presumption in Pennsylvania of at-will employment, which can only be overcome by express or implied contract. Further, the plaintiff carries the heavy burden of proof in overcoming the at-will presumption. Defendant argues that the Handbook's disclaimer clearly states its intent not to change employees' at-will status nor create any express or implied contractual rights.

#### B.  Plaintiff's Response

Plaintiff argues that Defendant's Motion to Dismiss must be denied because factual issues exist about whether Defendant has created an implied contract through its Employee Handbook. Specifically, Plaintiff claims a reasonable person in Plaintiff's position could interpret the Handbook as evincing an intent to alter the at-will employment presumption. Plaintiff further claims that the mandatory language of the Handbook imposed a duty upon Defendant to assist Plaintiff in securing an employment position for which she was qualified.

## IV.  Legal Standards

### A.  Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claim involves a question of federal law. Supplemental jurisdiction over the state law claim is proper pursuant to 28 U.S.C. § 1367(a).

### B.  Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court looks to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The motion will be granted only when it is certain that no relief could be granted under any set of facts that plaintiff could prove. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to state a valid complaint a plaintiff must make a "showing" that is more than just a blanket assertion that he is entitled to relief.

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The Supreme Court has also cautioned "that without some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests." Id. (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n.3 (2007)).

In deciding a Rule 12(b)(6) motion, a court may consider allegations in the complaint, exhibits attached to the complaint, and matters of public record. City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993).

## VI. Discussion

Pennsylvania has a strong presumption of at-will employment. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 290 (Pa. 2000) ("this Court has steadfastly resisted any attempt to weaken the presumption of at-will employment in this Commonwealth"). A party may overcome this presumption by an express contract, an implied-in-fact contract, and additional consideration passing from employee to employer. Ruzicki v. Catholic Cemeteries Ass'n of Diocese of Pittsburgh, 610 A.2d 495, 497 (Pa. Super. 1992). The contract must express a "'clear and definite intention'" to overcome the presumption. Grose v. Procter & Gamble Paper Prod., 866 A.2d 437, 441 (Pa. Super. 2005) (quoting Rutherfoord v. Presbyterian-Univ. Hosp., 612 A.2d 500, 503 (1992)). "Thus, an employee handbook does not overcome the 'at-will' presumption unless the handbook's language clearly expresses the employer's intent to do so." Grose, 866 A.2d at 441 (citing Rutherfoord, 612 A.2d at 503).

To create an express contract, "an employment handbook must contain unequivocal provisions that the employer intends to be bound by it and renounces the long-held principle of at-will employment." Fralin v. C & D Sec., Inc., 2008 WL 2345957, at *5 (E.D. Pa. 2008) (citing Reilly v. Stroehmann Bros. Co., 532 A.2d 1212, 1213 (Pa. Super. 1987)). In this case, Plaintiff has not identified any Handbook language stating that her employer intended to be bound by the Handbook. She cites to two policies in the Handbook which she claims were allegedly breached by Defendant, specifically the language about transfers and promotions within the network and the description of the special job matching / re-employment assistance program. (Compl. ¶¶ 58-60). However, Plaintiff does not assert how these provisions demonstrate the employer's intent to renounce at-will employment. Further, the Handbook contains an express disclaimer stating that the Handbook and its policies do not create contractual rights and that the Handbook does not change employee's at-will status. (Def.'s Memo. Ex. A p. 6). As such, the Handbook can not be construed as an express contract.

Neither can the Handbook be construed as an implied contract.

> A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook. The handbook must contain a clear indication that the employer intended to overcome the at-will presumption. We have held that it is for the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be bound legally.

Bauer v. Pottsville Area Emergency Med. Serv., Inc., 758 A.2d 1265, 1269 (Pa. Super. 2000) (citing Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214-15 (Pa. Super. 1997)). Handbook disclaimer statements that a handbook does not constitute an employment contract or change the at-will presumption are sufficient to show that an employer did not intend to create an

employment contract. See Ruzicki, 610 A.2d at 498 (holding that the handbook disclaimer stating that the handbook did not effect an employee's at-will status was an "insurmountable burden" to the plaintiff's case); see also Erdman v. Nationwide Ins. Co., 510 F.Supp.2d 363, 376 (M.D. Pa. 2007), rev'd on other grounds, 2007 WL 2428697 (M.D. Pa. Aug. 22, 2007) ("Pennsylvania courts have repeatedly held that handbook provisions that 'contain disclaimers or state that there is no intent to create an employment contract are sufficient to retain the at-will presumption.'" (quoting Raines v. Haverford Coll., 849 F.Supp. 1009, 1012 (E.D. Pa. 1994))); Landmesser v. United Air Lines, Inc., 102 F.Supp.2d 273, 280 (E.D. Pa. 2000) (holding that handbook language stating that "'These regulations do not constitute an employment contract . . . .'" nullified that plaintiff's breach of contract claim). Based on the express disclaimer in Defendant's Handbook both disclaiming a contract and preserving employees' at-will status, Plaintiff has failed to show the existence of an implied contract. Instead, the Handbook states that it "summarizes human resource policies," including the promotion and transfer-within-network provision and job matching program provision relied on by Plaintiff.

  Plaintiff appears to imply in her response brief that the pages of the Handbook submitted by Defendant to support its motion, including the disclaimer, are from a more recent version of the Handbook than the version in effect at the time of Plaintiff's hiring and during her employment. (Pl.'s Memo. Law Opp'n Def.'s Mot. 3). However, Plaintiff does not specifically assert that the disclaimer is a newly-added Handbook provision, and therefore her vague implication to this effect can not be credited. Instead, since Plaintiff's claim relies on the Handbook, the Court may rely on the Handbook's disclaimer language included in Defendant's Exhibit A to its brief. Pension Benefit Guar. Corp., 998 F.2d at 1196. In addition, Plaintiff

-8-

claims that the mandatory language that employees who are laid off "will receive first consideration . . . for all available vacant positions" imposes a duty on Defendant to assist Plaintiff in securing a position, despite the disclaimer language. This argument simply can not overcome the express disclaimer of contractual rights in the Handbook to support a breach of contract claim. Plaintiff does not cite a single case allowing a breach of contract claim where a handbook disclaimer exists. To the contrary, both federal and state courts have held that a disclaimer negates an employment contract claim. As such, Plaintiff's breach of contract claim must be dismissed.

## VII. Conclusion

Based on the strong presumption for at-will employment and the express disclaimer in Defendant's Employee Handbook that the Handbook did not confer any contractual rights or alter the at-will presumption, Defendant's Motion to Dismiss Plaintiff's breach of contract claim is granted.

An appropriate Order follows.